879 So.2d 706 (2004)
Curtis P. MEDINE, Individually and Michael Buck as Tutor and Legal Guardian of John Michael Kramer, Minor Child of Janice Buck Medine
v.
Dr. Richard R. RONIGER.
No. 2003-C-3436.
Supreme Court of Louisiana.
July 2, 2004.
Rehearing Denied September 3, 2004.
*708 Patrick H. Hufft, Hufft & Hufft, New Orleans; Aub A. Ward, Naquin & Ward, Baton Rouge; Counsel for Applicant.
Gary L. Hanes, Talley, Anthony, Hughes, & Knight; Peter E. Sperling, John B. Cazale, V, Frilot, Partridge, Kohnke & Clements, New Orleans; Counsel for Respondent.
Peter T. Dazzio, Chris J. LeBlanc, Baton Rouge, Counsel for Louisiana Hospital Assn., Louisiana Hospital Assn. Medical, General Liability Trust (Amicus Curiae).
Larry Roedel, Hilary Taylor, Baton Rouge, Patient's Compensation Fund Oversight Board, (Amicus Curiae).
Margaret Diamond, Monica A. Frois, Joseph I. Giarrusso, Jr., New Orleans, Doctors Hospital of Jefferson, Kenner Regional Medical Center, Meadowcrest Hospital, Memorial Medical Center, Northshore Psychiatric Hospital, Northshore Regional Medical Center, St. Charles General Hospital (Amicus Curiae).
David R. Sobel, Alexandria, Christus Health, Christus St. Frances Cabrini Hospital, Christus St. Patrick Hospital, and Christus Schumpert Health System (Amicus Curiae).
CALOGERO, Chief Justice.
This court granted supervisory writs in this medical malpractice case to determine whether certain provisions of the Louisiana Medical Malpractice Act ["LMMA"] contained in La.Rev.Stat. 40:1299.47, relative to medical review panels, prohibit medical review panelists from offering expert testimony on behalf of one of the parties in a trial held after the medical review panel has rendered its decision. Finding no error in the judgment of the lower courts allowing medical review panelists to testify on behalf of the defendant in this case nor any merit in the other assignments of error raised by the plaintiffs, we affirm.

FACTS AND PROCEDURAL HISTORY
Plaintiffs in this case are the surviving spouse and minor child of suicide victim, Janice Medine, a patient of defendant, Dr. Richard R. Roniger, who died on December 10, 1990, when she ingested an overdose of medication prescribed by defendant. Pursuant to the requirements of La.Rev.Stat. 40:1299.47(A)(1)(a)[1] and (B)(1)(a)(i),[2] plaintiffs filed a medical malpractice *709 complaint against defendant, asserting that defendant had breached the applicable standard of care by prescribing improper quantities of medicine in light of Ms. Medine's history of suicide attempts and by failing to monitor Ms. Medine's medication prescriptions properly. The claimants also alleged that Ms. Medine's suicide was caused by defendant's medical malpractice.
A medical review panel, composed of Dr. Frederick Henderson, Dr. Clyde Watkins, and Dr. Richard Richoux, was convened in response to plaintiffs' complaint. Following its review of the various documents submitted by the parties, the medical review panel issued a written unanimous expert opinion reflecting its findings that the evidence did not support the conclusion that defendant failed to meet the applicable standard of care as charged by plaintiffs.[3]
After the medical review panel rendered its decision, plaintiffs filed suit for damages against defendant based on the same allegations considered by the panel. Defendant's "Pre-Trial Order" indicated his intention to call all three of the medical review panelists and designated each panelist as "expert," while plaintiffs'"Pre-Trial Order" listed the three panelists as witnesses they "might" call and designated each panelist as "Medical panel, cross."
As part of their case in chief, plaintiffs' presented the testimony of Dr. Gary E. Miller, who was qualified by the court as an expert in psychiatry and psychopharmacology. Dr. Miller testified to his expert opinion, based on his review of Ms. Medine's medical records, that defendant had violated the standard of care in his treatment of Ms. Medine by altering her medications without first getting the benefit of blood levels. Dr. Miller also stated his opinion that defendant misdiagnosed Ms. Medine's condition, stating his belief, based on medical records, that she had bipolar disorder.
Defendant presented the testimony of Dr. Richoux, one of the medical review panelists he had listed on his Pre-Trial Order as an expert witness. Dr. Richoux was qualified as an expert in the field of general psychiatry without objection from plaintiffs. Dr. Richoux then testified concerning his service as a member of the medical review panel, including questions concerning the vow of impartiality he took when he became a member of the panel. Thereafter, defense counsel asked Dr. Richoux questions related to the expert opinion previously offered by plaintiffs' expert, Dr. Miller. At that point, plaintiffs' counsel objected to Dr. Richoux's expert testimony.
Plaintiffs' objection was initially based on the fact that Dr. Richoux had not reviewed Dr. Miller's testimony or his deposition as a member of the medical review panel, as Dr. Miller's testimony had not been submitted to the panel by plaintiffs. Plaintiffs asserted that Dr. Richoux's testimony should be limited to the documents he reviewed at the time the panel met. In support of that argument, plaintiffs cited *710 La. Rev.Stat. 40:1299.47(C)(7)[4], which describes the role of a medical review panelist in general, and La.Rev.Stat. 40:1299.47(H),[5] which describes the procedure after the medical review panel has rendered a decision. Plaintiffs also argued that defendant never identified Dr. Richoux as defendant's independent expert witness.
Following extensive arguments on the issue, the district court ruled that Dr. Richoux would be allowed to testify as defendant's expert. In support of his ruling, the district court noted that plaintiffs chose not to share Dr. Miller's testimony with the medical review panel, chose not to depose the medical review panelists prior to trial, and chose not to file a motion in limine to exclude all or part of the testimony of the medical review panelists, despite the fact that the defendant had listed the panelists as expert witnesses without qualification. Following this ruling by the district court, Dr. Richoux answered questions concerning Dr. Miller's criticisms of defendant's treatment of Ms. Medine, disputing each of those criticisms and explaining why the medical review panel did not find that any of defendant's actions criticized by Dr. Miller breached the applicable standard of care. Another medical review panelist, Dr. Henderson gave similar expert testimony on behalf of the defendant.
Following the trial, the jury returned a verdict in favor of defendant. In jury interrogatories, the jury answered "no" to the following question: "Do you find that Dr. Richard Roniger breached the standard of care for psychiatrists in his treatment of Janice Medine?" The district court thereupon rendered judgment dismissing plaintiffs' claims against the defendant. Plaintiffs appealed, asserting that the district court improperly allowed the medical review panelists to testify as the defendant's own hired, expert witnesses. Plaintiffs also contested the district court's refusal to give two requested jury charges.
The court of appeal affirmed the district court judgment dismissing plaintiffs' claims against defendant. In support of its decision, the court of appeal cited the opinion of the Louisiana First Circuit Court of Appeal in Clelland v. Haas, 99-2971 (La.App. 1 Cir. 12/22/00), 774 So.2d 1243, noting that the Clelland court had addressed the identical issue and found *711 that "there is nothing in [La.Rev.Stat. 40:1299.47(C)(7)] to prohibit medical review panel members from subsequently testifying as an expert for either party at a trial concerning the same medical malpractice claim." Id. at p. 6, 774 So.2d at 1247. The court of appeal also rejected the plaintiffs' assignments of error based on the district court's refusal to give two requested jury charges. This court granted writs to review the court of appeal decision.[6]

EXPERT TESTIMONY OF MEDICAL REVIEW PANELISTS
Generally, a district court is afforded great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal in the absence of an abuse of that discretion. Miller v. Southern Baptist Hosp., 00-1352, p. 5 (La.App. 4 Cir. 11/21/01), 806 So.2d 10, 15, writ denied, 01-3379 (La.3/28/02), 811 So.2d 943. In their first assignment of error, plaintiffs essentially argue that the district court abused its discretion by admitting Dr. Richoux's testimony because of the district court's erroneous interpretation and application of the following provisions of the LMMA:
La.Rev.Stat. 40:1299.47(C)(5):
Before entering upon their duties, each voting panelist shall subscribe before a notary public the following oath:
"I, (name) do solemnly swear/affirm that I will faithfully perform the duties of medical review panel member to the best of my ability and without partiality or favoritism of any kind. I acknowledge that I represent neither side and that it is my lawful duty to serve with complete impartiality and to render a decision in accordance with the law and the evidence."
La.Rev.Stat. 40:1299.47(H):
Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such expert opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness. If called, the witness shall be required to appear and testify. A panelist shall have absolute immunity from civil liability for all communications, findings, opinions and conclusions made in the course and scope of duties prescribed by this Part.
La.Rev.Stat. 40:1299.47(I)(1)(a):
Each physician member of the medical review panel shall be paid at the rate of twenty-five dollars per diem, not to exceed a total of three hundred dollars for all work performed as a member of the panel exclusive of time involved if called as a witness to testify in a court of law regarding the communications, findings, and conclusions made in the course and the scope of duties as a member of the medical review panel, and in addition thereto, reasonable travel expenses.
According to plaintiffs, the above articles, when read together, limit the testimony of a medical review panelist corroborating or disputing the panel's expert opinion. According to plaintiffs, the admission of the medical review panel opinion and the testimony of panelists at trial is intended to be viewed as a single "package" from an impartial source. Plaintiffs claim that allowing the panelists to testify as defendant's paid experts broke up the package *712 and caused confusion on the part of the jurors.
We find no merit in the plaintiffs' arguments based on the above-quoted provisions. In fact, we find that the statutory provisions cited by plaintiffs not only allow medical review panelists to testify on behalf of a party as paid experts, but that they actually contemplate that panelists will testify more often than not in that manner. La.Rev.Stat. 40:1299.47(H) specifically provides that "either party shall have the right to call, at his cost, any member of the medical review panel as a witness." Further, La.Rev.Stat. 40:1299.47(I)(1)(a) prescribes payment of medical review panelists for their work performed as members of the panel, and not for payment of panelists for their testimony in a court of law, the latter in keeping with the requirement of La.Rev.Stat. 40:1299.47(H) that the party calling the panelist must pay for his or her testimony.
Moreover, even if we agreed with plaintiffs' argument that the testimony of medical review panelists should be limited to corroboration or disputation of the panel majority's expert opinion in a given case, the testimony given by the panelists in this case did not exceed that limitation because, in our view, corroboration of the panel's opinion includes defending that opinion from contrary opinions. In this case, one of the plaintiffs' primary complaints is that the panelists should not have been allowed to comment on the criticisms of defendant's treatment of Ms. Medine raised by plaintiff's expert. Indeed, we find that the panelists' comments concerning the criticisms of defendants' treatment of Ms. Medine by plaintiffs' expert were part and parcel of their testimony corroborating the panel's opinion that defendant did not violate the standard of care. Thus, the written report of the medical review panel and the trial testimony of the panel members were presented as part of a single "package," as plaintiffs claim they should be. Moreover, allowing medical review panelists to testify at subsequent medical malpractice trials as expert witnesses assures the plaintiff of an expert in those cases where the panel has found that the defendant did violate the appropriate standard of care.
In further support of their arguments, plaintiffs also quote language from this court's decision in Galloway v. Baton Rouge General Hosp., 602 So.2d 1003 (La. 1992) to the effect that the medical review panel opinion is admissible, crucial evidence "both in the form of their report and their trial testimony." However, the plaintiffs' reliance on Galloway is misplaced for at least three reasons. First, the language quoted is excerpted from this court's favorable quotation of a dissenting opinion by a court of appeal judge, and is not strictly this court's holding in the case. Id. at 1006. Second, the excerpt selected by the plaintiffs omits language also quoted by this court to the effect that panelists may change their individual opinions after the panel's written expert opinion has been rendered and testify to their changed opinion at trial, so long as the panel's initial opinion is also presented for consideration. Id. at 1006-07. Third, the issue considered in Galloway was whether the district court had properly excluded prior testimony of the medical review panelists who had later changed their position  a very different issue from the issue presented by this case. Ultimately, we see nothing in the Galloway language quoted by plaintiffs that compels this court to find that the district court abused its discretion by allowing the medical review panelists to testify as the defendant's paid experts.
Plaintiffs also cite the following language from the indicated provisions of the LMMA that they claim support their argument *713 that medical review panelists' trial testimony should be limited: La.Rev.Stat. 40:1299.47(G) ["The panel shall have the sole duty to express its expert opinion, ... which shall be in writing and signed by the panelists, together with written reasons for their conclusions."]; La.Rev.Stat. 40:1299.47(C)(5) [requiring panel members to take the prescribed oath of impartiality before undertaking their role as panelists]; La.Rev.Stat. 40:1299.47(H) ["A panelist shall have absolute immunity from civil liability for all communications, findings, opinion and conclusions made in the course and scope of duties prescribed by this Part."]; La.Rev.Stat. 40:1299.47(I) [allowing a panelist to be "called as a witness to testify in a court of law regarding the communications, findings, and conclusions made in the course and scope of duties as a member of the medical review panel."]; and La.Rev.Stat. 40:1299.47(H) [granting a party the right to establish the conclusiveness or inconclusiveness of the panel opinion].
We have considered all of the plaintiffs' arguments based on the provisions of the LMMA, and agree with the court of appeal that "there is nothing in these sections or any of the other part of the malpractice act which provide that a party in a medical malpractice proceeding in district court is prevented from retaining a panel member as an expert at the trial of the matter." 03-819 at p. 4, 862 So.2d at 162. A review of the various provisions of La.Rev.Stat. 40:1299.47 as a whole reveals the legislature's clear intent to establish certain rules that would apply to members of a medical review panel during the period of time that the panel is engaged in its duties, and other rules governing the in-court testimony of panelists in a medical malpractice claim filed after the panel has discharged its duties and rendered its expert opinion. So long as the medical malpractice panel is engaged in its duties, La.Rev.Stat. 40:1299.47(C)(5) requires that panel members be bound by their oath of impartiality; La.Rev.Stat. 40:1299.47(C)(7) prohibits the panel member from discussing the claim with other panel members (until all evidence has been submitted), or with parties or their attorneys; La.Rev.Stat. 40:1299.47(G) provides that the sole duty of the panel is to express its expert opinion "as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care"; La.Rev.Stat. 40:1299.47(H) provides absolute civil immunity for the panelists' actions as a part of the panel; and La.Rev.Stat. 40:1299.47(I) requires that the panelist be paid for his services.
However, none of the provisions cited by plaintiffs restricts the testimony of the panelists once their duties as members of the panel have been discharged and the panel's written opinion has been rendered. At that point, the role of the panelist changes given the fact that, as stated above, La. Rev.Stat. 40:1299.47(H) and (I)(1)(a) expressly allow parties to call medical review panelists to testify at the party's cost. In all but the rarest of cases, that party will obviously be the party for which the panel ruled. In this case, that party was the defendant and the defendant sought to present the testimony of the panelists. However, this decision cuts both ways  in those cases in which the panel rules for the plaintiff, the plaintiff would doubtless be the party wishing to engage the panelists as expert witnesses. None of the statutory provisions or cases cited by plaintiffs can logically be interpreted to prohibit the testimony presented by the defendants in this case.
In a final argument, which they identify as their "most telling," plaintiffs *714 quote the provisions of La. Evid.Code art. 706, which provides as follows:
A. Civil cases. In a civil case, the court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless he consents to act. A witness so appointed shall be informed of his duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of his findings, if any; his deposition may be taken by any party; and he may be called to testify by the court or any party.

B. Disclosure of appointment. In a civil case, in the exercise of its discretion, the court may authorize disclosure to the jury of the fact that the court appointed the expert witness.
C. Parties' experts of own selection. Nothing in this Article limits the parties in calling expert witnesses of their own selection.
(Emphases supplied by plaintiffs.)
Plaintiffs emphasize the fact that the legislature expressly cross referenced La.Rev.Stat. 40:1299.47 with La. Evid. Code 706, and did not cross reference that statute with any other statute or codal article. The plaintiffs argue therefore that medical review panelists are intended to be similar to court-appointed experts that cannot be employed by either party. However, plaintiffs' argument ignores the more specific provisions of La.Rev.Stat. 40:1299.47(H) and (I)(1)(a), specifically allowing either party to call medical review panelists at his own cost to testify on his behalf at trial. It is well established that where two statutory provisions are in conflict, the statute that is more specific must prevail as an exception to the general statute. Smith v. Cajun Insulation, Inc., 392 So.2d 398, 402 (La.1980). Thus, we find no merit in the plaintiffs' argument based on La. Evid.Code art. 706.
In their second assignment of error, plaintiffs argue that the court of appeal judgment should be reversed because it is based on an incorrect interpretation and application of Clelland. Plaintiffs seek to distinguish this case from Clelland by emphasizing the statement in that case that the plaintiffs had called the medical review panelist to the stand, and had only objected when the defendant started questioning the panelist. Plaintiffs point out that they did not call any panelists to testify in this case. However, our reading of Clelland indicates that the factual distinctions between the two cases do not support a different rule in the instant case. The court's ultimate holding in Clelland is a general one, as the court found that "there is nothing in the statute to prohibit medical review panel members from subsequently testifying as an expert for either party at a trial concerning the same medical malpractice claim." 99-2971 at 6, 774 So.2d at 1247. Both the Clelland decision and the decision of the court of appeal in this case are correct in that regard.
In their third assignment of error, plaintiffs assert that, even if the judgments of the lower courts are correct, the "proper" rule of law that should be adopted by this court would prohibit a medical review panelist from testifying at trial in a "dual-role capacity" as both a panelist and a party's own expert witness. In support of this argument, plaintiffs adopt the specific arguments already set forth in our discussion of plaintiffs' first assignment of error. *715 For the reasons set out in that discussion, we find no merit in plaintiffs' third assignment of error.
The medical review panel procedure can best be described as a process by which the legislature has interjected an additional phase into the resolution of a medical malpractice claim. That being the case, it bears mentioning that medical review panelists are not judges, and their decision is not sacrosanct, as the plaintiffs seem to argue. Once their duties as panelists have been completed and the panel's written opinion has been rendered, the panelists are free to participate in a subsequent trial on the same claims considered by the panel in the same manner as any other medical expert, with one important difference. That difference is found in the fact that the panelists are required by La.Rev.Stat. 40:1299.47(H) to appear at trial if called by a party at that party's cost. Theoretically and practically, this rule is helpful not only to defendants, but also to plaintiffs, who are required to present the testimony of a medical expert in order to establish their burden of proof and avoid dismissal of a medical malpractice claim on summary judgment or by directed verdict. Accordingly, we find no abuse of the district court's discretion in his ruling admitting the expert testimony of the medical review panelists on behalf of the defendant.
Before moving on to discuss plaintiffs arguments concerning the district court's refusal to give jury instructions they requested, we find it appropriate to note our agreement with the arguments of both defendant and the various amicus curiae briefs in this court that this decision is consistent with both the accepted custom in medical malpractice cases in this state[7] and with this court's earlier statements in Everett v. Goldman, 359 So.2d 1256, 1267 (La.1978). In Everett, this court reversed a district court decision holding various provisions of the LMMA unconstitutional. As part and parcel of the court's rejection of the Everett plaintiff's equal protection claims, the court stated as follows:
Likewise, the requirement that malpractice claims be filtered through a medical review panel is not unreasonable and seems to be a rational effort to accomplish a plausible goal. A panel determination adverse to a malpractice claimant's interest does not preclude his filing a lawsuit. Such a determination would seem to exert subtle pressure on the claimant in a case of little worth to abandon or to settle his claim reasonably, thereby saving the defendant and his insurer the time, expense and worry of apparently needless litigation. And a favorable panel decision will probably aid the claimant in exerting pressure on a defendant to settle the case reasonably, thus treating the malpractice victim to savings in time and expense and to avoidance of possibly risky litigation. In those cases which do go to trial, a plaintiff successful before the panel will benefit from the evidentiary support of the panel's finding and the testimony of the panel members.
Id. at 1267. As defendant points out, the above language contemplates medical review panelists testifying on behalf of one or the other party. We also believe that *716 the rule expressly adopted herein allowing such expert testimony serves the purposes of the LMMA recognized in the above quotation. Allowing medical review panelists to testify as experts certainly furthers the goal of promoting settlement of medical malpractice claims because it provides additional support for the position of the party in whose favor the panel rules, thereby encouraging the other party to seek settlement.
Arguably, the rule we adopt herein, allowing expert testimony of medical review panelists, provides a particular benefit to plaintiffs when the panel has found that the defendant breached the applicable standard of care, even if the defendant refuses to settle in the face of an adverse medical review panel expert opinion. Because La.Rev.Stat. 40:1299.47(H) requires that panelists testify if called by a party at that party's cost, it assures that the plaintiff can locate a medical expert to testify in support of his claim.

FAILURE TO GIVE REQUESTED JURY CHARGES
In their fourth assignment of error, plaintiffs challenge the court of appeal's finding that the district court did not commit error by refusing to give a jury instruction concerning the dual-role capacity of defendant's expert witnesses. The court of appeal found that the pertinent LMMA provisions "do not distinguish between an expert witnesses' testimony as a panel member or as a witness retained by one of the parties," and that "the charge suggested by the plaintiffs does not reflect an accurate statement of the law." The court of appeal also found that the plaintiffs had failed to show prejudice arising from the district court's rejection of their requested instruction.
In their fifth assignment of error, plaintiffs challenge the court of appeal's finding that the district court did not commit error by failing to offer their special jury instruction drawn from Chauvin v. West Jefferson Mental Health Center, 597 So.2d 134 (La.App. 5th Cir.1992), relative to the principle that a psychiatrist treating a person with a history of depression or suicidal tendencies should restrict the medication dispensed to the smallest feasible amount. The court of appeal found that its own previous decision in Chauvin did not create an elevated duty on the party of psychiatrists treating suicidal patients to the extent that it requires a specific charge. The court of appeal further found that the jury charges in this case as a whole amply set forth the necessary burden of proof imposed on the plaintiffs.
In Nicholas v. Allstate Ins. Co., 99-2522 (La.8/31/00), 765 So.2d 1017, this court noted the duty of reviewing courts to evaluate allegations of improper jury instructions "in light of the entire jury charge to determine if they adequately provide the correct principles of law as applied to the issues framed in the pleadings and evidence and whether they adequately guided the jury in its deliberation." Id. at p. 8, 765 So.2d at 1023. According to Nicholas, the "determinative question" in such cases is "whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice." Brown v. White, 405 So.2d 555, 560 (La.App. 4 Cir.1981), aff'd, 430 So.2d 16 (La.1982).
Our review of the record in this case convinces us that the district court's refusal to give the plaintiff's requested jury instructions did not mislead the jury to the extent that it was prevented from doing justice. In fact, our review of the jury charges in their entirety reveals that they "adequately provide[d] the correct principles of law as applied to the issues framed in the pleadings and evidence" and that "they adequately guided the jury in its *717 deliberation." Id. Accordingly, we find no abuse of the district court's discretion in refusing to give the two jury charges requested by the plaintiffs.

DECREE
Finding no abuse of the district court's discretion in either his admission of the expert testimony of the medical review panelists or refusal to give the plaintiffs' requested jury charges, we affirm the judgments of the district court and the court of appeal in favor of the defendant, dismissing plaintiffs' claims.
AFFIRMED.
TRAYLOR, J., dissents and assigns reasons.
JOHNSON and KIMBALL, JJ., dissent for reasons assigned by TRAYLOR, J.
TRAYLOR, Justice, dissenting.
There is no question that either party to a medical malpractice action may call as a witness a member of the medical review panel. What is at issue is the scope of that expert witness' testimony. The majority's conclusion that a medical review panelist may also perform the additional role of independent expert witness is based upon an erroneous interpretation of the legislative scheme.
Each party has the right to call, at its own cost, any member of the medical review panel as a witness. La. R.S. 40:1299.47(H). The legislature provides to the panelists "absolute immunity from civil liability for all communications, findings, opinions and conclusions made in the course and scope of duties" as a panelist. La. R.S. 40:1299.47(I)(1)(a) further specifies the scope of the testimony of the panelists when called as a witness by a party:
Each physician member of the medical review panel shall be paid at the rate of twenty-five dollars per diem, not to exceed a total of three hundred dollars for all work performed as a member of the panel exclusive of time involved if called as a witness to testify in a court of law regarding the communications, findings, and conclusions made in the course and scope of duties as a member of the medical review panel, and in addition thereto, reasonable travel expenses. (Emphasis added)
It is clear that the scope of the testimony to be supplied by the medical review panelist called as a witness is to corroborate, explain or invalidate the panel report. In recognition that trial testimony will involve a greater commitment of time than the panel's ordinary review of written documents,[1] Subsection (I) provides that the party calling a panelist as a witness must pay for the time involved, as well as reasonable travel expenses.
The prejudice to a party which results from the majority's conclusion is aptly exhibited in the present case. The failure to issue a jury instruction informing the jurors of the dual role of the panelist expert witness prevented the jurors from considering the expert's testimony within its factual context. La. R.S. 40:1299.47(C)(5) requires impartiality on the part of medical review panel members in the form of a written, sworn oath or affirmation. This sworn oath or affirmation is attached to the written panel report which is admissible in evidence. La. R.S. 40:1299.47 C(5) and (H). In this case, as is the common practice, counsel highlighted this fact by questioning the panelist expert witness about his impartiality as a panel member. *718 Thereafter, and without further explanation to the jury, counsel elicited the panelist's expert opinion which included discrediting the other party's expert witness, information which had not been presented to the panel.
Although the majority chides opposing counsel for failing to depose the panel members or file a motion in limine when the panelists were listed as witnesses, if the scope of the panelists' testimony is properly circumscribed as in the legislative scheme, there is no need for such depositions or motions in limine. The medical review panel's report is based upon written evidence only. La. R.S. 40:1299.47(D)(1). Therefore, a party litigant already knows what the panelist expert witness's testimony will be from reviewing the medical review panel report, as well as what the witness's testimony is based upon.
Even the majority recognizes that the role of the panelist changes when a panelist is thereafter hired as an expert witness for one of the litigants. Although I disagree with the majority's conclusion that this is a proper interpretation of the legislative scheme, to fail to inform the jury of the dual nature of the expert witness is to prevent jurors from considering the expert's testimony in its proper context, to invite jury confusion and to clothe the paid expert witness's testimony with the imprimatur of the independent medical review panel.
For these reasons, I respectfully dissent.
NOTES
[1] La.Rev.Stat. 40:1299.47(A)(1)(a) provides as follows:

All malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided for in this Section.
[2] La Rev. Stat. 40:1299.47(B)(1)(a)(i) provides as follows:

No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.
[3] The panel listed the following reasons for its expert opinion that defendant did not violate the standard of care:

1. The medication prescribed by Dr. Roniger was necessary and proper for the treatment of this patient.
2. The dosage prescribed was proper.
3. Dr. Roniger properly diagnosed the patient and properly ordered medication for her treatment.
4. The patient had established a pattern of warning the doctor of her suicidal tendencies thereby enabling him to place her in the hospital until the tendencies subsided.
[4] La.Rev.Stat. 30:1299.47(C)(7) provides as follows:

A panelist or a representative or attorney for any interested party shall not discuss with other members of a medical review panel on which he serves a claim which is to be reviewed by the panel until all evidence to be considered by the panel has been submitted. A panelist or a representative or attorney for any interested party shall not discuss the pending claim with the claimant or his attorney asserting the claim or with a health care provider or his attorney against whom a claim has been asserted under this Section. A panelist or the attorney chairman shall disclose in writing to the parties prior to the hearing any employment relationship or financial relationship with the claimant, the health care provider against whom a claim is asserted, or the attorneys representing the claimant or health care provider, or any other relationship that might give rise to a conflict of interest for the panelists.
[5] La.Rev.Stat. 40:1299.47(H) provides as follows:

Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such expert opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness. If called, the witness shall be required to appear and testify. A panelist shall have absolute immunity from civil liability for all communications, findings, opinions and conclusions made in the course and scope of duties prescribed by this Part.
[6] Medine v. Roniger, 03-3436 (La.3/12/04), 869 So.2d 802.
[7] See, for example, the following cases cited by the briefs filed in this court as examples of cases in which medical review panelists testified at some length concerning the evidence and the panel's expert opinion: Hepler v. Lin, 03-1217 (La.App. 3 Cir. 3/31/04), 869 So.2d 969; Strange v. Shroff, 37,353 (La.App.2d Cir.7/16/03), 850 So.2d 1077; James v. Gordon, 95-1472 (La.App. 3d Cir.12/4/96), 690 So.2d 787; Evans v. Haynie, 26,135 (La.App. 2 Cir. 9/21/94), 643 So.2d 273; Turner v. Massaiah, 094-29 (La.App. 5th Cir.7/1/94), 641 So.2d 610, rev. In part on other grounds, aff'd in part, 656 So.2d 356.
[1] The evidence to be considered by the medical review panel is submitted by the respective parties in written form only. La. R.S. 40:1299.47(D)(1).